UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SHIFANG WONG,

Plaintiff,

v.

METROPOLITAN LIFE INSURANCE COMPANY,

Defendant.

Case No. 25-cv-10274-PCP

**ORDER GRANTING PLAINTIFF'S MOTION FOR JUDGMENT PURSUANT TO RULE 52, DENYING DEFENDANT'S MOTION FOR JUDGMENT PURSUANT TO RULE 52, AND DENYING AS MOOT PLAINTIFF'S MOTION IN LIMINE**

Re: Dkt. Nos. 28, 29, 34

Plaintiff Shifang Wong brings this action against Metropolitan Life Insurance Company (MetLife) pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a)(1). Wong challenges MetLife's denial of Long Term Disability (LTD) benefits under her employer's welfare benefits plan, which MetLife administers. Before the Court are cross motions for judgment under Federal Rule of Civil Procedure 52. Dkt. Nos. 28, 29. Also before the Court is Wong's motion in limine to admit evidence not contained in the administrative record. Dkt. No. 34. For the following reasons, the Court grants Wong's motion for judgment, denies MetLife's motion for judgment, and denies Wong's motion in limine.

**LEGAL STANDARD**

ERISA provides claimants with a federal cause of action to recover benefits due under an ERISA plan. *See* 29 U.S.C. § 1132(a)(1)(B). In resolving ERISA claims on cross motions for judgment under Federal Rule of Civil Procedure 52, "the Court conducts what is essentially a bench trial on the record, evaluating the persuasiveness of conflicting testimony and deciding which is more likely true." *McCulloch v. Hartford Life & Accident Ins. Co.*, No. 19-CV-07716-SI, 2020 WL 7711257, at *7 (N.D. Cal. Dec. 29, 2020) (citing *Kearney v. Standard Ins. Co.*, 175 F.3d

United States District Court
Northern District of California

United States District Court
Northern District of California

1084, 1094–95 (9th Cir. 1999)). "In an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately." Fed. R. Civ. P. 52(a)(1).

## FINDINGS OF FACT[1]

### I. Wong's Employment

Wong is a scientist who most recently worked on cancer research and cell therapy drug products at Adicet Bio, a biotechnology company. Wong performed experiments, analyzed data from clinical trials, and processed patient samples. Wong's job responsibilities demanded "4–8 hours of uninterrupted focus," "zero tolerance for error," and "sustained concentration, emotional regulation, and cognitive stamina." AR 61. Even a small mistake in Wong's work had the potential to "compromise patient safety and the integrity of a clinical trial." AR 61.

In 2021, Wong began suffering severe bullying and workplace harassment. This included her coworkers interfering with her experiments, ostracizing her socially, and at one point even smearing her car with mud. The harassment took a serious toll on Wong. Bringing her workplace issues to the attention of her direct manager and Adicet's human resources department failed to resolve them. By late 2023, Wong felt as if she was no longer able to perform her job responsibilities due to her mental distress. In late October and early November of that year, Wong repeatedly informed her manager that she could not complete her assigned experiments.

### II. Wong's Medical History

Following her inability to perform her assigned work, Wong consulted with her primary care physician, Dr. Gabriel Young, on November 5, 2023. Dr. Young diagnosed Wong with major depressive disorder, panic attacks, anxiety-hysteria, and insomnia. He observed difficulties with Wong's memory and cognitive focus, noting that Wong "presented with 2 to 3 bouts of mental blank and difficulty in focusing, forgetful[ness], difficulty in making decision[s], racing heart beats and difficulty in breathing due to panic attacks." AR 568. Dr. Young referred Wong to a

[1] To the extent that any findings of fact are included in the Conclusions of Law section, they shall be deemed findings of fact, and to the extent that any conclusions of law are included in the Findings of Fact section, they shall be deemed Conclusions of Law.

psychiatrist and advised that Wong take off from work for around two months, which she did beginning November 8, 2023.

Following Dr. Young's referral, Wong began seeing Psychiatric Nurse Practitioner (NP) Nima Lal in December 2023. Like Dr. Young, NP Lal also diagnosed Wong with generalized anxiety disorder and major depressive disorder. A mental health evaluation conducted by NP Lal reported severe anxiety and moderate depression. NP Lal continued to treat Wong over the next year. Wong saw NP Lal, or another nurse practitioner in the same office as NP Lal, approximately two to three times per month from December 2023 to December 2024. Wong desired to see NP Lal more frequently but did not do so due to financial constraints. NP Lal consistently wrote doctor's notes excusing Wong from work during this period.

In November 2024, NP Lal explained his views on Wong's ability to work. He advised that Wong's mental conditions still rendered her "unable to return to work." AR 250. In December 2024, NP Lal elaborated on his view. He explained that despite some improvement in Wong's symptoms over the previous year, it was his "clinical opinion that returning to work [would] only exacerbate her condition." AR 251.

## III. The Plan

As an employee of Adicet, Wong was covered by an ERISA-governed welfare benefits plan that MetLife administers. The plan includes Long-Term Disability (LTD) benefits that cover disability caused by anxiety and depression. To qualify, a claimant must be "unable to perform with reasonable continuity the Substantial and Material Acts necessary to perform [her] Usual Occupation in the usual and customary way" "as a result of sickness or injury." AR 1847. The plan defines the term "Substantial and Material Acts" as meaning "the important tasks, functions, and operations generally required by employers from those engaged in [the claimant's] Usual Occupation." AR 1847. Finally, the plan defines the term "Usual Occupation" as the occupation that the claimant was "regularly performing for the employer when the Disability began." AR 1848.

As is apparent from these definitions, the plan's definition of disability is occupation-specific. A claimant qualifies for LTD benefits under the plan if they cannot perform their usual

occupation, even if they would be able to work in a different capacity or field.

## IV. Benefits Claim History

Wong submitted a claim for LTD benefits in June 2024, while she was seeing NP Lal for psychiatric treatment. Wong's LTD claim sought coverage beginning November 8, 2023, which was the day she stopped reporting to work. After a review process that included one of MetLife's independent psychologists Jess Ghannam examining Wong's medical records, MetLife denied Wong's claim for LTD benefits in February 2025. MetLife stated that Wong had failed to establish she had a condition preventing her from performing her typical work obligations.

MetLife's reasoning was based on Ghannam's review of Wong's medical records. Dr. Ghannam concluded that Wong's mental conditions were not severe enough to prevent her from working. In particular, Dr. Ghannam stated that Wong's mental condition was "notably unremarkable aside from mood abnormalities." AR 361. He pointed out that Wong's medical reports indicated she was "well groomed," "attentive," and had "intact" memory. AR 361. Dr. Ghannam then "acknowledged" Wong's "work-related issues and [her] associated symptoms," but remarked that Wong "did not endorse any suicidal or homicidal ideations," was not "deemed to be a threat to herself or others," and had not been hospitalized. AR 361. Following Dr. Ghannam's review, NP Lal submitted additional information explaining his opinion that Wong was unable to work. Dr. Ghannam affirmed his initial opinion in response to NP Lal's reports.

Wong appealed MetLife's denial of LTD benefits. In response to Wong's appeal, MetLife had a second independent doctor Elbert Richardson review Wong's medical records. Dr. Richardson agreed with Dr. Ghannam's opinion. He noted that Wong "complained of difficulty concentrating, lack of focus, and short-term memory loss," but he discounted those symptoms on the grounds that Wong provided "no clinical, measurable, and fully validated evidence to support impaired cognition" or to "substantiate [Wong's] subjective complaints." AR 41. MetLife then affirmed the denial of LTD benefits in August 2025.

Wong's LTD claim was not her only interaction with MetLife. In October 2024, Wong had also applied for Short-Term Disability (STD) benefits based on her mental conditions. STD benefits are a separate form of disability coverage provided under Wong's benefits plan. The

starting date for Wong's STD benefits claim was November 8, 2024—one year after the starting date of her claim for LTD benefits.

Given the timing of Wong's LTD and STD benefits claims, MetLife's LTD and STD departments ended up reviewing Wong's claims simultaneously. During MetLife's review of Wong's STD claim, one of MetLife's psychiatric specialists Lorelie Nixon twice interviewed Wong, once over the telephone and once over video. Nixon noted Wong's psychological testing scores for severe anxiety and moderate depression. Following the telephone interview, Nixon concluded that Wong was "currently limited from functioning in the ability to express thoughts and information verbally and writing." AR 1259. Nixon also noted that Wong had a limited ability to "make independent decisions/judgement," and "sustain concentration or focus." AR 1259–60. Based in large part on Nixon's assessment, MetLife awarded Wong STD benefits beginning November 8, 2024.

Nixon later interviewed Wong again, this time over video. After this interview, Nixon reiterated her conclusion that Wong's ability to "perform[] job duties would be impacted by anxiety, depression, [and] inability to maintain control of emotions, focus[,] and concentration." AR 1317. MetLife then extended Wong's STD benefits award to the maximum allowable period.

## CONCLUSIONS OF LAW

The parties seek opposing judgments. Wong requests that the Court determine she was entitled to LTD benefits beginning November 8, 2023, and order an award of benefits. Wong also moves to admit a medical report that is not contained in the administrative record. MetLife requests a judgment in its favor upholding its decision to deny Wong LTD benefits.

"ERISA was enacted 'to promote the interests of employees and their beneficiaries in employee benefit plans,' and 'to protect contractually defined benefits.'" *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989) (internal citations omitted). ERISA "permits a person denied benefits under an employee benefit plan to challenge that denial in federal court." *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008). "ERISA's civil-enforcement provision ... allows a claimant 'to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.'" *Muniz*

*v. Amec Constr. Mgmt., Inc.*, 623 F.3d 1290, 1294 (9th Cir. 2010) (quoting 29 U.S.C. § 1132(a)(1)(B)).

"A denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone*, 489 U.S. at 115. The parties agree that de novo review is appropriate here. *See* Dkt. Nos. 17, 19. Under de novo review, "the court simply proceeds to evaluate whether the plan administrator correctly or incorrectly denied benefits," with no deference given to the administrator's decision. *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006) (en banc). "The district court's task is to determine whether the plan administrator's decision is supported by the record, not to engage in a new determination of whether the claimant is disabled. Accordingly, the district court must examine only the rationales the plan administrator relied on in denying benefits and cannot adopt new rationales that the claimant had no opportunity to respond to during the administrative process." *Collier v. Lincoln Life Assurance Co. of Bos.*, 53 F.4th 1180, 1182 (9th Cir. 2022). "[W]hen the court reviews a plan administrator's decision under the de novo standard of review, the burden of proof is placed on the claimant." *Muniz*, 623 F.3d at 1294. The claimant must prove that she is entitled to benefits by a preponderance of the evidence. *Id.*

## I. Wong is entitled to LTD benefits under the plan.

For the following reasons, Wong has shown by a preponderance of the evidence that she falls within the plan's definition of disability.

In this case, every practitioner who interacted with Ms. Wong concluded she was unfit to work. Wong's primary care physician Dr. Young initially determined that her mental conditions would prevent her from working when he pulled her from work for two months. Then, NP Lal treated Wong between 2 to 3 times per month from December 2023 to December 2024, and over the entire course of treatment determined that Wong suffered from severe anxiety and was unable to return to work. Even Nixon, MetLife's own reviewer in the STD benefits process who interviewed Wong by telephone and video, concluded that Wong's cognitive functioning was impaired. Indeed, Nixon determined that Wong was "limited from functioning in the ability to

express thoughts and information verbally and in writing" and "sustain[ing] concentration and focus." AR 1259–60.

By contrast, MetLife's LTD reviewers did not have any opportunity to "know and observe" Wong. *Cf. Jebian v. Hewlett-Packard Co. Emp. Benefits Org. Income Prot. Plan*, 349 F.3d 1098, 1009 n.8 (9th Cir. 2003). Although the opinion of a treating physician is not necessarily entitled to deference over an opinion formed on record review, *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003), a plan administrator's decision to conduct a "pure paper" review "raise[s] questions about the thoroughness and accuracy of the benefits determination," *Montour v. Hartford Life & Acc. Ins. Co.*, 588 F.3d 623, 634 (9th Cir. 2009) (citation omitted). As a result, courts may weigh the fact that treating physicians have "a greater opportunity to know and observe the patient" than the plan's physicians do. *Jebian*, 349 F.3d at 1009 n.8 (quoting *Black & Decker Disability Plan*, 538 U.S. at 832). Discounting a claimant's difficulties with mental functioning is "particularly troubling" when the reviewing physician has "never met the claimant." *See Demer v. IBM Corp. LTD Plan*, 835 F.3d 893, 905–06 (9th Cir. 2016) (citation omitted). Here, MetLife's LTD reviewers conducted only a "pure paper" review of Wong's records when they concluded that her cognitive functioning was not hindered at a level that would prevent her from working. Particularly given the subjective nature of Wong's conditions, the Court concludes that the opinions of the physicians who interacted with Wong are more persuasive than those offered after a record-only review. *See Montour*, 588 F.3d at 634; *Demer*, 835 F.3d at 905–06.

The highly specialized cognitive demands of Wong's work as a scientist are key to the Court's determination. The Ninth Circuit has recognized that whether a claimant's job "require[s] higher levels of mental functioning, including concentration and memory" is relevant to a disability benefits determination. *Demer*, 835 F.3d at 906. Even if Wong's mental conditions would have allowed her to work some jobs, her occupation was quite cognitively rigorous, demanding "4–8 hours of uninterrupted focus," "zero tolerance for error," and "sustained concentration, emotional regulation, and cognitive stamina." AR 61. Thus, even a relatively moderate hinderance to Wong's mental functioning could interfere with her ability to adequately

perform her usual work.

The persuasiveness of MetLife's LTD reviewers is diminished by the fact that they did not explicitly consider the cognitive demands of Wong's work as a scientist. Instead, Dr. Ghannam and Dr. Richardson seemingly evaluated whether Wong was disabled from performing any work at all. That renders many of their observations of little relevance to the actual question before the Court. For example, Dr. Ghannam and Dr. Richardson's observations that Wong was not suicidal and had not been hospitalized do not speak to Wong's ability to work as a scientist. Given that its own reviewing physicians failed to offer any opinions with respect to Wong's ability to pursue her specific vocation, MetLife has almost no evidence to rebut the opinions of Wong's practitioners. Indeed, MetLife has not presented the opinion of any medical professional who specifically considered whether Wong was capable of working *as a scientist* and concluded that she was not. MetLife's LTD reviewers' opinions would have persuasive value in a different benefits context where the relevant inquiry was whether the claimant is able to perform *any* employment, but are of limited use here. *Cf.* 42 U.S.C. § 1382c(a)(3) (defining disability in Social Security context as "substantial gainful activity").

Although only minimal objective testing backs up Wong's account, Wong did not need more. MetLife was not entitled to fully discredit the subjective accounts of Wong's mental conditions—anxiety, depression, and general cognitive functioning—based on a lack of objective testing. *See James v. AT&T W. Disability Benefits Program*, 41 F. Supp. 3d 849, 880–82 (N.D. Cal. 2014); *Demer*, 835 F.3d at 905–06. Furthermore, at least some testing backed up the symptoms that Wong's physicians documented. For example, during Wong's appointments with NP Lal throughout December 2023 to September 2024, Wong consistently scored for severe anxiety on a test consisting of questions about the prevalence and severity of anxiety symptoms. MetLife correctly points out that Wong did not present neuropsychological testing regarding her memory loss and general cognitive function, but the absence of such testing, particularly when MetLife never asked for it, does not undermine Wong's documented reports of her symptoms. *See Demer*, 835 F.3d at 905–06.

Finally, the Court considers MetLife's award of STD disability benefits. Wong contends

that the STD benefits award creates a presumption of entitlement to LTD benefits. *Cf. Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 871 (9th Cir. 2008); *Muniz*, 623 F.3d at 1296. But Wong places too much weight on MetLife's STD determination. There is no evidence before the Court about the STD benefits plan's definition of disability, so it is unclear whether it is the same as the LTD benefits standard. And Wong sought STD benefits for a different period. Accordingly, the mere fact that MetLife awarded Wong STD benefits does not create a presumption of entitlement to LTD benefits. Instead, the relevance of the STD benefits determination arises from the evidence in the administrative record generated through that process. As explained, Nixon, the STD benefits reviewer who actually examined Wong, concluded that Wong was impaired in her cognitive functioning. Nixon's conclusions serve as additional evidence weighing in Wong's favor.[2]

In sum, based on the evidence in the administrative record, Wong has proven that it is more likely than not that she was unable to work as a scientist during the claimed LTD benefits period beginning November 8, 2023. The Court finds the opinions of Wong's treating physicians, who had a better opportunity to examine Wong, more persuasive than the opinions of MetLife's LTD reviewers, who conducted a record-only review without considering the specific cognitive demands of Wong's work as a scientist.[3]

MetLife contests this conclusion on three fronts, but each of its arguments are unpersuasive.

First, MetLife renews its assertion that Wong's impairments were not severe enough to

---

[2] Although it is unclear whether Nixon's report was made available to MetLife's LTD benefits reviewers, Nixon's reports are part of the administrative record. Furthermore, the LTD benefits review process acknowledged that MetLife had awarded Wong STD benefits, and as such, MetLife reasonably could have known about the evidence in the STD benefits proceedings. *See* Dkt. 32, at 5 (citing AR 1418). The Court therefore concludes that Nixon's findings may be considered on the instant motions for judgment under Rule 52.

[3] Wong argues that she is entitled to an adverse inference because MetLife has not produced a recording of Nixon's video interview. MetLife, however, maintains that no such recording of the interview exists. Dkt. 32, at 2. Although there is some indication that the video interview was recorded, *e.g.*, AR 1341 (Nixon telling Wong that the video interview was on a "recorded line"), the record before the Court is insufficient to make a finding as to whether MetLife deviated from its standard recording policies or destroyed the video. Accordingly, the Court declines to draw any adverse inference from the video's absence.

prevent her from working. It cites several pieces of evidence in the administrative record that cut against Wong's claim of disability. For example, MetLife points to some statements Wong made to her treating physicians that she felt "okay" and notes some days where NP Lal reported Wong's cognition as "intact" and "attentive." AR 194, 198. But these facts merely show that Wong was not completely disabled. As discussed, that is not the standard for an award of LTD benefits. Given the nature of Wong's work, even moderate impairment to her cognitive function suffices. *See Demer*, 835 F.3d at 906. The fact that Wong felt "okay" some days (even as she consistently scored for severe anxiety) does not prove that she was capable of working as a scientist.

Second, MetLife contends that Wong's mental impairments are specifically tied to the bullying she endured at Adicet. In other words, MetLife argues that Wong could work as a scientist at some other company without a hostile workplace, and as such, does not qualify as disabled under the plan. But the record does not support MetLife's conclusion. To be sure, some statements in Wong's medical records reference the difficulty Wong would experience returning to work at Adicet specifically. But other evidence discusses Wong's cognitive difficulties generally, without reference to Adicet. MetLife's STD benefits reviewer Nixon, for example, did not tie her opinion that Wong was unable to work to Adicet in particular. Thus, MetLife's suggestion that Wong could work elsewhere fails to persuade the Court on the record before it.

Third, MetLife makes a causation argument. Turning to the plan's definition of disability, MetLife argues that Wong's mental conditions were caused by bullying and harassment rather the required "sickness or illness." AR 1847. MetLife's argument, however, misinterprets the plan's definition of disability. The plan imposes no restriction on coverage for mental conditions that were themselves triggered by other events. And the evidence in the record shows that Wong's anxiety, depression, and cognitive difficulties prevent her from working. MetLife does not dispute that Wong's current mental conditions qualify as a covered "sickness or illness," so the fact that the hostile workplace was an upstream cause of Wong's mental conditions does not preclude coverage.

Accordingly, the Court determines that Wong is entitled to LTD benefits beginning November 8, 2023.

United States District Court
Northern District of California

## II. The Court denies Wong's motion in limine.

Wong also moves to admit a medical report produced during workers' compensation proceedings. She argues that the report is strong evidence of entitlement to LTD benefits. MetLife opposes admission, contending that the Court should not consider the workers' compensation medical report because it is extraneous to the administrative record—i.e., it was not before MetLife when it evaluated Wong's entitlement to benefits.

In ERISA cases like this, the Ninth Circuit has instructed that district courts generally should consider only the evidence in the administrative record. *Mongeluzo v. Baxter Travenol Long Term Disability Benefits Plan*, 46 F.3d 938, 944 (9th Cir. 1995) (citation omitted). As such, there is a high standard to introduce extraneous evidence. To admit the report, Wong must show that the circumstances "*clearly established* that [the report] is *necessary* to conduct an adequate de novo review of the benefit decision." *Opeta v. Nw. Airlines Pension Plan for Contract Emps.*, 484 F.3d 1211, 1217 (9th Cir. 2007) (quoting *Mongeluzo*, 46 F.3d at 944) (emphasis original). The parties dispute whether Wong has satisfied this burden.

The Court declines to reach the parties' arguments on Wong's motion in limine. The Court has determined that Wong is entitled to LTD benefits based on the evidence in the administrative record alone. Wong's motion in limine is offered only to bolster the evidence in the administrative record. Because the existing record is sufficient to resolve this case in her favor, the Court need not consider the proposed extra-record evidence.

## CONCLUSION

For the foregoing reasons, Wong's motion for judgment is granted, MetLife's motion for judgment is denied, and Wong's motion in limine is denied. The parties are instructed to meet and confer regarding the appropriate amount of Wong's benefits award. The Court will hold a further status conference on February 4, 2027. If the parties reach an agreement on the amount of the benefits award before the status conference, they shall file a joint stipulation to that effect and the Court will vacate the status conference, issue a final judgment, and close this case. If the parties fail to reach an agreement on the amount of the benefits award, they shall file a joint statement outlining any remaining disputes, not to exceed 10 pages, by no later than January 25, 2027. At the

status conference, the Court will discuss any remaining disputes over the amount of Wong's benefits award and the best means to resolve those disputes.

**IT IS SO ORDERED.**

Dated:

P. Casey Pitts
United States District Judge